

FILED & ENTERED

JUN 26 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Timothy M Rosen and Victoria S Rosen, Debtors | Case No.:    2:16-bk-24731-ER<br>Adv. No.:    2:17-ap-01491-ER |
| Brad D. Krasnoff, Chapter 7 Trustee,<br>                                                    Plaintiff<br>v.<br>Lancaster Baptist Church,<br>                                                    Defendant | **MEMORANDUM OF DECISION GRANTING TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINT**<br><br>Date:    June 26, 2018<br>Time:    10:00 a.m.<br>Location:    Ctrm. 1568<br>Roybal Federal Building<br>255 East Temple Street<br>Los Angeles, CA 90012 |

At the above-captioned date and time, the Court conducted a hearing on the *Trustee's Motion for Leave to Amend Complaint Pursuant to FRBP 7015* [Doc. No. 34] (the "Motion"). Eric P. Israel appeared on behalf of the Chapter 7 Trustee (the "Trustee"); Steven R. Fox appeared on behalf of Defendant Lancaster Baptist Church (the "Church" or the "Defendant"). Prior to the hearing, the Court issued a tentative ruling indicating its intent to deny the Motion. Upon further consideration of the arguments presented by the parties, the Court VACATES the tentative ruling and GRANTS the Motion.[1]

---

[1] The Court considered the following papers and pleadings in adjudicating the Motion:
1) Trustee's Complaint for Avoidance and Recovery of Transfers [Doc. No. 1] (the "Complaint");
2) Trustee's Notice of Motion and Motion for Leave to Amend Complaint Pursuant to FRBP 7015 [Doc. No. 34] (the "Motion");

## I. Facts and Summary of Pleadings
### A. Background

On October 3, 2017, the Trustee commenced the instant *Complaint for Avoidance and Recovery of Transfers* [Doc. No. 1] (the "Complaint") against the Church. The Complaint seeks to avoid and recover, as actually and constructively fraudulent, transfers made by the Debtors to the Church in the amount of $222,646.42.

On October 4, 2017, the Court entered a scheduling order which set February 16, 2018 as the deadline to amend pleadings and/or join other parties. *See* Doc. No. 4 (the "Initial Scheduling Order"). On January 22, 2018, after conducting a Status Conference, the Court entered a subsequent Scheduling Order which confirmed the litigation deadlines set by the Initial Scheduling Order—including the February 16, 2018 deadline to amend the pleadings and/or join parties. *See* Doc. No. 21 (the "Scheduling Order").

On February 1, 2018, the Court entered an order assigning the matter to mediation and appointing David Gould as the mediator. *See* Doc. No. 24 (the "Mediation Order"). On March 12, 2018, the parties executed a stipulation to extend various litigation deadlines. *See* Doc. No. 26 (the "First Scheduling Stipulation"). The extension was sought because the first date upon which all parties were available to attend the mediation was April 12, 2018. On March 15, 2018, the Court approved the First Scheduling Stipulation, and extended upcoming litigation deadlines by approximately sixty days. However, the Court did not extend the deadline to amend the pleadings. *See* Doc. No. 28.

The parties attended mediation on April 12, 2018, but the action did not settle. On April 18, 2018, the Court approved a stipulation extending the Trustee's deadline to respond to the Defendant's First Set of Interrogatories by fourteen days, to and including May 9, 2018. *See* Doc. No. 32. On June 20, 2018, the parties executed a stipulation to continue the pretrial and trial dates by sixty days. *See* Doc. No. 41 (the "Second Scheduling Stipulation"). The continuance was sought to accommodate a scheduling conflict of the Trustee's lead trial counsel as well as scheduling conflicts of both sides pertaining to religious holidays. On June 21, 2018, the Court approved the Second Scheduling Stipulation, and continued the pretrial conference and trial for approximately sixty days. *See* Doc. No. 43. The pretrial conference is currently set for November 13, 2018, and the trial is currently set for the week of November 26, 2018.

### B. The Trustee's Motion for Leave to Amend the Complaint

The Trustee seeks leave to amend the Complaint. As currently pleaded, the Complaint seeks to avoid transfers made by the Debtors to the Church within the seven years preceding the date of the petition (the "Petition Date"), in the total amount of $222,646.42. The proposed First Amended Complaint extends the avoidance period by an additional three years, seeking to avoid transfers made within ten years of the Petition Date. Total transfers sought to be avoided are $375,820.08 (an increase of approximately $150,000). The Trustee makes the following arguments in support of the Motion:

Pursuant to Civil Rule 15, leave to amend must be liberally granted. The Supreme Court has set forth four factors that should be considered when evaluating a request for leave to amend: (1)

---

3) Opposition to Trustee's Motion for Leave to Amend Complaint Pursuant to FRBP 7015 [Doc. No. 37] (the "Opposition"); and
4) Trustee's Reply to Defendant's Opposition to Motion of Trustee for Leave to Amend Complaint Pursuant to FRBP 7015 [Doc. No. 40] (the "Reply").

undue delay, (2) bad faith or dilatory motive, (3) futility of amendment, and (4) prejudice to the opposing party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

First, the Church will not be prejudiced by the proposed First Amended Complaint. Because the Debtors sought bankruptcy protection on November 7, 2016, the Trustee's deadline to commence an avoidance action against the Church is November 7, 2018. The Trustee could simply initiate an entirely new adversary proceeding against the Church, but amending the instant Complaint is more efficient and conserves judicial resources.

Second, the proposed amendment is not futile, because it simply seeks to extend the avoidance period by an additional three years. Third, the amendment is not sought in bad faith. When investigating events surrounding the Debtors' default on a 2007 loan guaranteed by the Small Business Administration (the "SBA Loan"), the Trustee discovered the additional facts supporting the proposed First Amended Complaint. Finally, the Trustee has not unduly delayed filing the First Amended Complaint. After the parties attended mediation on April 12, 2018, the Trustee discovered the additional avoidable transfers made by the Debtors to the Church. On May 3, 2018, the Trustee asked the Church to stipulate to the amendments, but the Church declined. Shortly thereafter, the Trustee brought the instant Motion for leave to amend.

### C. The Church's Opposition to the Motion

The Church opposes the Motion, and makes the following arguments and representations in support of its Opposition:

By seeking leave to amend pursuant to Civil Rule 15, the Trustee is seeking to circumvent Civil Rule 16's more stringent requirements for modifying a Scheduling Order. Because the Court has entered the Scheduling Order setting forth the litigation deadlines governing this action, Civil Rule 16, not Civil Rule 15, determines whether leave to amend should be granted.

Civil Rule 16 provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge …." Civil Rule 16(b)(4). If good cause is shown, the party seeking leave to amend must still show that leave to amend is proper under Civil Rule 15. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–9 (9th Cir. 1992). The primary consideration when determining good cause is the diligence of the party seeking leave to amend. "[I]f the party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 608–9.

Here, the Trustee has not shown diligence. The Court entered the Initial Scheduling Order on October 4, 2017, which provided that the deadline to amend the pleadings was February 16, 2018. The Court's subsequent Scheduling Order, entered on January 22, 2018, reiterated the February 16 deadline. On March 9, 2018, after the deadline to amend the pleadings had elapsed, the parties agreed to extend the deadlines set forth in the Scheduling Order, but did not agree to extend the deadline to amend the pleadings.

The Trustee claims that the proposed amendments are based upon newly discovered facts. However, since August 30, 2017, the Trustee has been in possession of a list of the Debtors' transfers to the Church going back to 2000. The facts concerning the SBA Loan have been a matter of public record since at least May 2010. Had the Trustee acted diligently, he could have easily discovered these facts prior to the deadline for amending the pleadings.

Even if the Trustee can show good cause for leave to amend, he is still not entitled to amend the Complaint, because the Church will be prejudiced by amendment, and amendment would be futile. With respect to prejudice, the Church, as a religious entity, does not have the ability to place even $223,000 of donations in an account for any time, much less ten years, while it waits

to determine whether the donor will seek bankruptcy protection and subject the Church to an avoidance action. By the proposed amendments, the Trustee is now seeking to avoid an additional $150,000 in transfers.

Amendment would be futile. As a result of amendments to the Bankruptcy Code made by the Religious Liberty and Charitable Donation Protection Act of 1998 (the "RLCDPA"), the Debtors' transfers are protected from avoidance. The RLCDPA added §548(a)(2)(A) to the Bankruptcy Code, which provides that charitable donations that are less than 15% of the Debtors' gross annual income during the year in which the transfer is made may not be avoided. Section 548(a)(2)(B), also added by the RLCDPA, provides that even those transfers in excess of the 15% safe-harbor are protected from avoidance, if the transfers are "consistent with the practices of the debtor in making charitable contributions." Here, amendment would be futile, because the transfers at issue either fall within the 15% safe-harbor, or were consistent with the Debtors' practices in making charitable contributions.

The RLCDPA's provisions also prevent the Trustee from avoiding the transfers using non-bankruptcy law under §544(b)(1). Section 544(b)(2) provides that the avoidance powers granted by §544(b)(1) do not apply to transfers that are "charitable contributions" within the meaning of §548(a)(2).

**D. The Trustee's Reply to the Church's Opposition**

The Trustee makes the following arguments and representations in Reply to the Church's Opposition:

First, there is no merit to the Church's contention that the Trustee has not acted diligently in seeking leave to amend the Complaint. The Ninth Circuit decisions finding a lack of diligence by the party seeking leave to amend involve situations in which the party sought to raise new legal theories and/or add new parties to the action. Here, the Trustee does not seek to add new parties or raise new legal theories; the Trustee seeks only to extend the reach-back period by an additional three years.

Second, the Church will not be prejudiced by the filing of the First Amended Complaint. The Church maintains that it will be prejudiced because it cannot afford to segregate donations for the purpose of protecting itself from potential avoidance actions. But if the Trustee prevailed upon the claims asserted in the Complaint presently on file, the Church would be required to return to the estate approximately $223,000 in donations it received from the Debtors. The additional $150,000 in transfers placed in issue by the proposed amendments do not qualify as prejudice within the meaning of Civil Rule 16. Prejudice within the context of Civil Rule 16 refers to the burden imposed by being required to respond to additional discovery or new legal theories. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (finding amendment would be prejudicial because it would require reopening discovery); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (same). Here, the Church is not prejudiced because the discovery deadline has not elapsed.

Third, the proposed amendments are not futile. The 15% safe-harbor provision of §548(a)(2)(A) fails to protect the majority of the transfers which the Trustee seeks to avoid. The Trustee's calculations show that 2014 was the only year in which the Debtors' donations to the Church fell below 15% of the Debtors' income. Nor are the transfers protected on the ground that the transfers were consistent with the Debtors' charitable giving practices. The Debtors' contributions to the Church were not consistent, regardless of whether consistency is assessed by evaluating the face amount of the contributions or the amount of the contributions as a

percentage of the Debtors' gross annual income. The aggregate annual amount of contributions varied widely from a low of $28,876.05 in 2014 to a high of $81,133.00 in 2006. As a percentage of the Debtors' income, contributions ranged from 14.5% in 2014 to 44.88% in 2006.

## II. Findings and Conclusions
### A. The Motion is Granted

At oral argument, the Trustee focused the majority of his presentation on the standard for leave to amend imposed by Civil Rule 15. However, because the Court has entered a Scheduling Order, the Trustee's request for leave to amend is governed by *both* Civil Rules 16 and 15. As the Ninth Circuit has held, "[o]nce the … court has filed a pretrial scheduling order pursuant to [Civil Rule] 16 … that rule's standards [control]" with respect to a request for leave to amend. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Civil Rule 16(b)(4) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the … judge." Civil Rule 16's "good cause" standard "primarily considers the diligence of the party seeking the amendment. The … court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609.

If the Trustee can demonstrate "good cause" under Civil Rule 16, the Trustee must then show that amendment is also appropriate under Civil Rule 15. *See Johnson*, 975 F.2d at 609 (explaining that the "party seeking to amend [the] pleading after [the] date specified in [the] scheduling order must first show 'good cause' for amendment under Rule 16(b), then, if 'good cause' be shown, the party must demonstrate that amendment was proper under Rule 15").

In the context of an avoidance action commenced by a Trustee, Civil Rule 16's diligence standard must be construed against the backdrop of the Trustee's deadline to commence avoidance actions. The reason is that if the Court denied the Trustee's request for leave to amend, the Trustee could simply commence a second adversary proceeding against the Church, asserting those claims which the Trustee sought leave to pursue by way of an amended complaint in this action. Adjudication of these additional claims by means of a second complaint would be procedurally cumbersome and would impose additional costs and delay.

Subject to exceptions that do not apply here, §546(a) requires the Trustee to commence an avoidance action within "two years after the entry of the order for relief." The order for relief was entered on November 7, 2016, meaning that the Trustee's deadline to commence avoidance actions is November 7, 2018.

Where, as here, the Trustee has sought leave to amend the Complaint well within the limitations period for the commencement of avoidance actions, the Court cannot find a lack of diligence by the Trustee. The limitations period imposed by §546 establishes a general framework under which the Trustee's diligence must be assessed. Absent exceptional circumstances—none of which are present here—a Trustee's request for leave to amend that is made within the limitations period generally will be granted. While it certainly would have been possible for the Trustee to seek leave to amend sooner, the Trustee's decision to seek leave to amend shortly after mediation failed was not unreasonable.

Having found that the Trustee has shown "good cause" under Civil Rule 16 with respect to the request for leave to amend, the Court next considers whether the Trustee has satisfied Civil Rule 15. Under Civil Rule 15, the "court should freely give leave [to amend] when justice so requires." However, "[l]eave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in

futility, or creates undue delay." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Granting the Trustee's request for leave to amend would not cause the Church undue prejudice, and the request for leave is not sought in bad faith, is not futile, and will not create undue delay. The Church argues that it would be prejudiced by amendment, because it would then be required to defend against the avoidance of an additional $150,000 in transfers. This argument overlooks the Trustee's ability to commence a second action to avoid the very same $150,000 in transfers. In fact, granting the Trustee leave to amend will reduce the Church's litigation costs by enabling the Trustee to adjudicate all his claims against the Church in a single action.

The request for leave to amend is not sought in bad faith. As discussed, the Trustee sought leave to amend shortly after mediation failed, and well within the two-year limitations period. The timing of the request does not suggest procedural gamesmanship.

Amendment of the Complaint is not futile. The Church asserts that the additional transfers the Trustee seeks to avoid by way of the First Amended Complaint are protected from avoidance by the RLCDPA. As discussed in greater detail below, in the Court's view, the Trustee's case as set forth in the First Amended Complaint suffers from significant uncertainties. However, the Court cannot find at this time that the additional claims asserted in the First Amended Complaint are futile.

Finally, granting the Trustee leave to amend will not create undue delay. The Pretrial Conference is currently set for November 13, 2018, and the trial is currently set for the week of November 26, 2018. Even with the filing of the First Amended Complaint, the Court expects that a continuance of the trial will be unnecessary. In the event a continuance is required, it will be brief.

One additional point bears emphasis. At oral argument, the Trustee suggested that the deadlines imposed by the Initial Scheduling Order bear less weight since the Initial Scheduling Order was a standard form order issued concurrently with the issuance of the Summons. Nothing could be further from the truth. The Court issues scheduling orders concurrently with the summons so that the parties are aware of the deadlines with which they must comply from the outset and can plan accordingly. Although those deadlines may sometimes be modified upon a showing of good cause—as has occurred here—all deadlines ordered by the Court must be taken seriously:

> A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of Johnson's case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.

*Johnson*, 975 F.2d at 610 (9th Cir. 1992) (internal citation and quotation marks omitted).

**B. New Litigation Deadlines**

The Amended Complaint, which is attached to the Motion as Exhibit 1, shall be deemed to have been filed on **June 26, 2018**, the date of the issuance of this Memorandum of Decision.

Because the Church has already submitted to the Court's jurisdiction, no summons will be issued in connection with the Amended Complaint. The following deadlines shall apply[2]:

1) The deadline for the Church to respond to the Amend Complaint is **July 10, 2018**.
2) The parties must conduct an additional day of mediation by no later than **September 28, 2018**. (See Section II.C., below, for additional guidance with respect to the mediation.)
3) A Status Conference, in which the parties shall report the results of the mediation, shall take place on **October 16, 2018, at 10:00 a.m.** A Joint Status Report must be submitted by no later than fourteen days prior to the hearing.
4) The last day to disclose expert witnesses and expert witness reports is **October 16, 2018**.
5) The last day to disclose rebuttal expert witnesses and rebuttal expert witness reports is **October 30, 2018**.
6) The last date to complete discovery relating to expert witnesses (e.g., depositions of expert witnesses), including hearings on motions related to expert discovery, is **November 7, 2018**.[3]
7) The last day for dispositive motions to be heard is **November 7, 2018**.[4] If the motion cutoff date is not available for self-calendaring, the deadline for dispositive motions to be heard is the next closest date which is available for self-calendaring.
8) The last day to complete discovery (except as to experts), including hearings on discovery motions, is **November 7, 2018**.[5]
9) A Pretrial Conference is set for **November 13, 2018 at 11:00 a.m.** By no later than fourteen days prior to the Pretrial Conference, the parties must submit a Joint Pretrial Stipulation via the Court's Lodged Order Upload (LOU) system. Submission via LOU allows the Court to edit the Joint Pretrial Stipulation, if necessary. Parties should consult the Court Manual, section 4, for information about LOU.
10) In addition to the procedures set forth in Local Bankruptcy Rule 7016-1(b), the following procedures govern the conduct of the Pretrial Conference and the preparation of the Pretrial Stipulation:
    a) By no later than thirty days prior to the Pretrial Conference, the parties must exchange copies of all exhibits which each party intends to introduce into evidence (other than exhibits to be used solely for impeachment or rebuttal).
    b) When preparing the Pretrial Stipulation, all parties shall stipulate to the admissibility of exhibits whenever possible. In the event any party cannot stipulate to the admissibility of an exhibit, that party must file a Motion in Limine which clearly identifies each exhibit alleged to be inadmissible and/or prejudicial. The moving party must set the Motion in Limine for hearing at the same time as the Pretrial Conference; notice and service of the Motion shall be governed by LBR 9013-1. The Motion in

---

[2] The dates of the Pretrial Conference and trial remain unchanged. However, the motion cutoff date and deadlines pertaining to discovery have been extended in view of the filing of the First Amended Complaint.

[3] For contemplated hearings on motions related to expert discovery, it is counsel's responsibility to check the Judge's self-calendaring dates, posted on the Court's website. If the expert discovery cutoff date falls on a date when the court is closed or that is not available for self-calendaring, the deadline for hearings on expert discovery motions is the next closest date which is available for self-calendaring.

[4] If the motion cutoff date is not available for self-calendaring, the deadline for dispositive motions to be heard is the next closest date which is available for self-calendaring.

[5] If the non-expert discovery cutoff date is not available for self-calendaring, the deadline for non-expert discovery motions to be heard is the next closest date which is available for self-calendaring.

      Limine must contain a statement of the specific prejudice that will be suffered by the moving party if the Motion is not granted. The Motion must be supported by a memorandum of points and authorities containing citations to the applicable Federal Rules of Evidence, relevant caselaw, and other legal authority. Blanket or boilerplate evidentiary objections not accompanied by detailed supporting argument are prohibited, will be summarily overruled, and may subject the moving party to sanctions.
    c) The failure of a party to file a Motion in Limine complying with the requirements of ¶(1)(h)(ii) shall be deemed a waiver of any objections to the admissibility of an exhibit.
    d) Motions in Limine seeking to exclude testimony to be offered by any witness shall comply with the requirements set forth in ¶(1)(h)(ii).
11) Trial is set for the week of **November 26, 2018**. The trial day commences at 9:00 a.m. The exact date of the trial will be set at the Pretrial Conference. Consult the Court's website for the Judge's requirements regarding exhibit binders and trial briefs.

## **C. The Parties are Ordered to Conduct an Additional Day of Mediation**

    In the Court's view the Trustee's case suffers from significant uncertainties. To be clear, the Court is not making any definitive ruling in connection with the issues discussed below. The Court's objective is to draw the parties' attention to the fact that there is little binding Ninth Circuit authority with respect to the issues raised by the Complaint. Consequently, both the Trustee and the Church face substantial risk should they continue to litigate this action. In light of this reality, the Court believes that an additional day of mediation would be productive. The Court is aware that the parties previously were unable to reach a settlement at the mediation conducted on April 12, 2018. The Court expects that with the benefit of the Court's perspective, additional mediation will be productive. Therefore, the Court will order the parties to conduct an additional day of mediation with Mr. Gould.

    The primary issue is whether the Debtors' transfers to the Church are protected from the Trustee's avoidance powers pursuant to §548(a)(2)(B). Based on the record presently available to the Court, the transfers at issue may be summarized as follows (as noted, the following summary, as well as the accompanying discussion, is not intended as a finding of the Court, and is provided instead to facilitate further mediation):

| Year | Debtors' Gross Income | Charitable Contribution | Charitable Contribution as a Percentage of Gross Income |
|---|---|---|---|
| 2007 | $161,597.00 | $68,277.65 | 42.25% |
| 2008 | $138,838.00 | $32,586.90 | 23.47% |
| 2009 | $175,237.00 | $52,309.11 | 29.85% |
| 2010 | $(29,880.00) | $34,296.45 | Not applicable |
| 2011 | $135,805.00 | $28,330.50 | 20.86% |
| 2012 | $162,178.00 | $34,303.60 | 21.15% |
| 2013 | $130,167.00 | $27,398.82 | 21.05% |
| 2014 | $185,336.00 | $26,876.05 | 14.5% |
| 2015 | $190,498.00 | $37,499.00 | 19.68% |
| 2016 | $162,593.00 | $34,300.00 | 21.10% |

Section 548(a)(2)(A) creates a safe-harbor for contributions that do not exceed 15% of the debtor's gross annual income. Such transfers are generally not subject to avoidance by the Trustee. Transfers that do not fall within the scope of the §548(a)(2)(A) may not be avoided by the Trustee if those transfers are "consistent with the practices of the debtor in making charitable contributions."

The Court is not aware of binding Ninth Circuit authority governing the determination of whether charitable contributions are "consistent with the practices of the debtor." In *Wolkowitz v. Breath of Life Seventh Day Adventist Church (In re Lewis)*, 401 B.R. 431, 446 (Bankr. C.D. Cal. 2009), the court reasoned that consistency should be determined by examining "the amount of the transfer versus past transfers, and the percentage of the debtor's income each year that is devoted to charitable contributions." Were this Court to adopt the standard set forth in *Lewis*, a strong argument could be made that the Debtors' charitable contributions were "consistent" within the meaning of §548(a)(2)(B). While there is some variation in the contributions, "the word 'consistent' is a fluid term and not rigid." *Lewis*, 249 B.R. at 447. The arithmetic mean of the contributions, when measured as a percentage of the debtors' income (and excluding the year 2010, in which the debtors had negative income), is 23.76%. The standard deviation of the same data set is only 7.9 percentage points. Excluding the outlier year 2007, in which the Debtors made an unusually large charitable contribution, the arithmetic mean of the contributions is 21.45% and the standard deviation is 4.2 percentage points. Consistency within the meaning of §548(a)(2)(B) cannot be defined strictly in statistical terms, but statistical analysis provides a helpful tool—and in this case, the statistical analysis strongly suggests that the contributions could qualify as "consistent" under §548(a)(2)(B).

In the Court's view, consistency is more reliably assessed by examining the contributions as a percentage of the Debtors' gross annual income, rather than by examining the face dollar amount of the contributions. In assessing the consistency of the Debtors' practices with respect to charitable contributions, it is appropriate for the Court to consider the religious context in which such contributions were made. The Debtors' religious tradition encourages observers to use a percentage of annual income as the yardstick for measuring charitable contributions. The Debtors donated to the Lancaster Baptist Church; the term "tithing," as understood by most adherents of this religious tradition, refers to a tenth of one's income.[6]

## III. Conclusion

Based upon the foregoing, the Motion is GRANTED. The parties are ordered to conduct an additional day of mediation by no later than **September 28, 2018**. The Court will enter an order consistent with this Memorandum of Decision.

---

[6] The Court takes judicial notice of the views of the Southern Baptist Convention regarding charitable contributions. In a statement issued in 2013, available at <http://www.sbc.net/resolutions/1234/on-tithing-stewardship-and-the-cooperative-program>, the Southern Baptist Convention defined "tithing" in terms of a percentage of one's annual income.

###

Date: June 26, 2018

Ernest M. Robles
United States Bankruptcy Judge